In the Matter of the Application of the COUNTY OF ERIE for the Condemnation of Certain Lands for Park Purposes in the Town of Lancaster, County of Erie, Respondent, against LANCASTER DEVELOPMENT Co., INC., Appellant.

Fourth Department, May 6, 1931.

*Levant D. Lester*, for the appellant.

*M. Edwin Merwin* [*George J. Feldman* of counsel], for the respondent.

CROSBY, J. This proceeding was attempted to be conducted pursuant to chapter 638 of the Laws of 1924, as amended by chapter 257 of the Laws of 1925 and chapter 244 of the Laws of 1928, which provides that proceedings to condemn lands for park purposes must be " instituted by the park commission in the name of the county of Erie." The petition herein was made by the board of supervisors and verified by its chairman. The design of the statute was that the park commissioners should institute the proceeding, for they are the ones who must be supposed to know the facts that form the basis of the proceeding. We do not need to decide that this departure from the statute is so material and prejudicial as to call for reversal, for there were other errors that compel reversal.

No fault is found with the proceedings before the commissioners, nor with the amount of their award. The errors were committed before the proceeding reached the commissioners.

It is unnecessary to cite authorities for the salutary rule that statutes authorizing the taking of property by eminent domain must be strictly followed in all those respects that are vital to property rights. The statute under which this proceeding was conducted is not difficult to understand and to follow. It provides

(§ 4) that " The park commission after the approval of the board of supervisors, and before acquiring by condemnation any of the real estate, rights or interests therein for the purposes set forth in this act shall cause to be prepared and shall approve a map or maps of such lands so to be acquired or taken as approved by the board of supervisors with a certificate, showing such approval endorsed thereon and signed by the president and secretary of the commission or by a majority of the commissioners and shall then cause such map or maps to be filed in the office of the county clerk of the county of Erie." Provision is further made for amended maps, with the further provision that " thereafter all proceedings shall be had in reference to the last amended map."

Section 5 then provides that the park commission may acquire, from the owner, the " real estate * * * laid down or shown on said map, or maps so approved," by agreement, and section 6 provides that " If the said park commission shall be unable to agree with the owner," then the land " may be acquired by condemnation proceedings instituted by the park commission in the name of the county of Erie in the manner provided by law," etc.

The scheme of the statute is perfectly plain. First the park commissioners should determine what land they need for park purposes, then they should secure the approval of its acquisition by the board of supervisors, then they should cause to be prepared maps showing the lands desired, place their certificate of approval on the maps and file them in the county clerk's office. Next the park commissioners, armed with the approval of the board of supervisors, and equipped with maps showing accurately what land they want, should open negotiations with the owner for the purchase of the land, and start condemnation proceedings when those negotiations fail.

The record is entirely clear, indeed undisputed, that the park commissioners passed no resolutions in regard to the subject of acquiring the land in question. The secretary of the commission, under the direction of the chairman, made an offer to an officer of defendant of $300 an acre without stating how many acres were desired. These negotiations, informal in the extreme, were the only ones ever had with defendant, and they were had, not after, but before, any approval of the board of supervisors was sought or obtained and before any maps were made and filed, and the approval of the board of supervisors was given to the acquisition of " approximately four acres " not 8.612 acres, which was the amount sought to be condemned. Moreover, according to the petition itself no map was filed until three days before the petition was verified, the allegation in the petition that the map was filed

at all was controverted by the answer, and the filing was not proven on the trial. The map shows 8.612 acres of land to be taken, although the board of supervisors approved the taking of only " approximately four acres." The map is in evidence and it lacks the approval indorsed thereon of the park commissioners, as required by statute, and it bears no evidence of ever having been filed anywhere.

Plaintiff's brief tacitly admits some mistakes in the manner in which the proceeding was conducted, but asserts that defendant should have compelled their correction by taking appeals from one or more of the interlocutory orders. Defendant did its full duty to plaintiff when it clearly raised the questions during the progress of the proceeding, and has a right, under its notice of appeal, to bring up for review the proceedings antecedent to judgment. (Condemnation Law, § 19.)

It is clear that neither the letter nor the spirit of the statute was obeyed. The owner should have had a fair opportunity to negotiate for a sale of its land after being informed what land was required and how much. Neither the park commissioners nor anybody else had any power to condemn 8.612 acres of land pursuant to a resolution of the board of supervisors to condemn " approximately four acres."

The final order in condemnation should be reversed on the law, with costs, and the petition dismissed, without prejudice to a new proceeding.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Judgment and final order reversed on the law, with costs, and petition dismissed, with costs, without prejudice to a new proceeding.