296 So.2d 572 (1974)
GULF POWER COMPANY, a Corporation, Appellant,
v.
J.E. STACK, Jr., and Frances Margaret Stack, Husband and Wife, et al., Appellees.
No. S-285.
District Court of Appeal of Florida, First District.
June 25, 1974.
Supplemental Opinion July 25, 1974.
*573 W. Spencer Mitchem, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
D. Michael Chesser, of Moore, Dewrell, Anchors & Kessler, Ft. Walton Beach, for appellees.
Supplemental Opinion July 25, 1974. See 300 So.2d 41.
HOWELL, CHARLES COOK, Jr., Associate Judge.
This land condemnation suit, appealed by Gulf Power Company, the condemnor, from the judgment of the Circuit Court of Okaloosa County denying, at the hearing on the order of taking, Gulf's "right to take and ... right to condemn the lands described in the complaint" and "amended complaint," dismissing the action, and awarding costs and attorney's fees to J.E. Stack, Jr., and Frances Margaret Stack, his wife, and Howell W. Mayo and Lyda Mayo, his wife, the prospective condemnees, encountered a correct result below.
On the very threshold, and considering in legal vein Gulf's fencing attacks of straight thrust, disengagement and cutover, Stacks' and Mayos' defensive ploys of direct and circular parries and riposte, and all parties' remises and redoublements, Gulf's quest is at once seen as lacking in the proper statement of a cause of action, and as thwarted by non-established jurisdictional requirements.[1]
To explain:
Section 73.021, F.S.A., provides, in its here salient features,
"73.021 Petition, contents.  Those having the right to exercise the power of eminent domain may file a petition therefor in the circuit court of the county wherein the property lies, which petition shall set forth:
"(1) The authority under which and the use for which the property is to be acquired, and that the property is necessary for that use; ..."
Sub judice, the "complaint in eminent domain" was filed July 28, 1972. It was not accompanied by a resolution of Gulf's Board of Directors authorizing the acquisition by condemnation proceedings of a perpetual easement of right of way through, across and over the strips of land deemed essential for the construction, operation, and maintenance of the desired extensions of the company's electrical transmission and distribution system.
An amendment to the complaint was filed August 31, 1972. No such resolution was attached to it.
On September 21, 1972, still another amendment to the complaint was filed. Again there was no accompanying resolution.
*574 This impasse therefore faces Gulf: The statute, as we have seen, makes it mandatory for the petition to "set forth the authority under which ... the property is to be acquired;" and Tosohatchee Game Preserve, Inc. v. Central and Southern Florida Flood Control District, Fla., 1972, 265 So.2d 681, 683[2] plainly says that "`the authority under which ... the property is to be acquired ...' is not shown unless the resolution is attached to the condemnation petition."
Jurisdictional talk, this; and especially Tosohatchee's further explanation that a condemnor may achieve viability in the eminent domain procedure "only in compliance with the statute giving it such power." [3], p. 683. Many years ago it had been held in the Missouri case of City of St. Louis v. Franks, 9 Mo. App. 579, aff. 78 Mo. 41, that "to maintain the action in such a case, all the essential elements of jurisdiction ... must be proved" and that, of course, "the petition should state all jurisdictional facts." The Supreme Court of South Dakota, considering, in Ehlers et al. v. Jones et al., 1965, 81 S.D. 351, 135 N.W.2d 22, 23, a statute saying that "in all cases where any resolution ... of any corporation is required by law before taking private property, a copy of such resolution ... shall be attached to such petition," declared that "condemnation proceedings in which statutes have been ignored or with which there have been no substantial compliance are void."
But, urges Gulf, and with not inconsiderable first blush logic, there was indeed such an authorizing, predicatory resolution of its directorate here; adopted, as a matter of fact, on July 14, 1972; two weeks before the filing of the original complaint  and this resolution was actually marked "filed" among the papers in the case on September 12, 1972!
Still, (a) the resolution never was a part of, referred to in, or attached to, the complaint itself or either of its two amendments; (b) "in our judgment, the placing in the record of this resolution was inadequate to satisfy the requirement of Fla. Stat., Sec. 73.021(1), F.S.A., that the petition show by what authority the property is to be acquired", (emphasis supplied), Tosohatchee, 265 So.2d 683-684, in disposing, adversely to the condemnor there, of its resort to the doctrine of "substantial compliance" in defense of a resolution adopted some three and one-half months after the original filing of that action in the Circuit Court[2] and which, in the usual course of non-eminent domain litigation, well may have been regarded as a ratification by the board of directors of the antecedent action of its counsel in filing the complaint; and (c) "the passage of the (resolution) authorizing the street opening does not make out a prima facie case of compliance with precedent requirements." Franks, supra.
Because, as our Supreme Court has said in Tosohatchee, "... this statute must be strictly construed in favor of the landowner and ... substantial compliance[3] with its provisions is required *575 to sustain a petition for condemnation ... . . `The power of eminent domain ... ... is circumscribed by the constitution and statute in order that cherished rights of the individual may be safeguarded. It is one of the most harsh proceedings known to the law, consequently ... a strict construction will be given against the agency asserting the power.'" To identical impact is this court's own decision in Chalmers v. Florida Power and Light Company, Fla.App. 1, 1971, 245 So.2d 285, 287[1].
Condemnees Stack and Mayo, then, urging the substance of the foregoing observations in their oral argument and as Point II in their brief, and finding technical protection of their right to do so in ground 1 of their cross assignment of errors ("denial of Defendants' motion to dismiss the complaint", as to which kindly see Tosohatchee), in the philosophy of such impressive authority as Gold Coast Crane Service, Inc. v. Watier, individually and as Administratrix, Fla., 1971, 257 So.2d 249 (alleged error in failing to allow an amendment to a complaint cognizable under an assignment of error challenging the entrance of a summary judgment), and in Rule 3.7, subd. i, FAR, 32 F.S.A. ("... the Court ... may notice jurisdictional or fundamental error ... whether or not it has been ... made the subject of an assignment of error, or of an objection or exception in the court below"), this case, "without prejudice to a new proceeding," Erie Co. v. Lancaster Development Co., Inc., N.Y. Sup. Ct., 1931, 232 App.Div. 331, 250 N.Y.S. 108, is
Affirmed.
RAWLS, C.J., and JOHNSON, J., concur.
NOTES
[1] Hence the other arguments interestingly raised and thoroughly presented by Gulf and the Stacks and Mayos alike will be passed over without further written ado. We are aware that "the volume of reported decisions is such and is so rapidly increasing that in writing opinions which are to be published judges may well take this fact into consideration, and curtail them accordingly." Time, Inc. v. Firestone, Fla.App. 4, 1973, 279 So.2d 389, 391 n. 3. Also, "that the litigants are not entitled to a written opinion on each or any point as a matter of constitutional right"; since, when such writings are not critical to the ultimate decision of a case, to indulge in them anyway "would be to make an advocate of this court ..." Id., p. 393.
[2] It is interesting to note that Gulf's Board, too, on September 6, 1972, more than a month after the filing of the complaint, adopted and, on September 12, 1972, filed in the cause, again wholly without reference to the complaint or any of its amendments, an amendment to its earlier resolution of July 17, 1972.
[3] A maxim of plane geometry has it that "the whole is equal to the sum of all its parts." How can there be "substantial compliance" with the "whole", i.e., the "petition," which as statutorily mandated, "shall set forth the authority (viz., the resolution) under which ... the property is to be acquired," when nowhere in the petition or either of them, is the resolution, an integral "part" of the "whole", so much as referred to by reference, much less "attached" to, or made to "accompany," the petition  and when, therefore, there is "no" compliance at all (and there must be "some" compliance before there can ever be "substantial" compliance.)